## SOUTHERN COTTON OIL CO. v. ATLANTIC COAST LINE R. CO.

(District Court, E. D. Virginia. February 3, 1927.)

Carriers ⟨key⟩117—Railroad company held not liable for nondelivery of oil which leaked from a tank car, furnished and delivered loaded by the shipper.

The "code of rules governing the condition of, and repairs to, freight cars for the interchange of traffic" to which practically all the railroads in the country are parties, and which apply to the transportation of shipments in private cars furnished by the shipper, which are carried at reduced rates, but repairs to which cars are to be made at the expense of the owner, also provide that "each railroad is responsible for the condition of all cars on its line." Held, that such provision did not render a railroad company liable for nondelivery of oil which leaked from a tank car furnished by the shipper and delivered after being loaded, where the defect was not discoverable by such inspection as the company could and did make, and, after the leakage was discovered, it exercised ordinary care to minimize the loss.

At Law. Action by the Southern Cotton Oil Company against the Atlantic Coast Line Railroad Company. On motion by plaintiff to set aside verdict and grant new trial. Denied.

Charles E. Cotterill, of Atlanta, Ga., for plaintiff.

Edmund M. Preston and R. W. Strange, both of Richmond, Va., for defendant.

GRONER, District Judge. The position of the plaintiff on this motion is that the court erred in not instructing a verdict for the

plaintiff. No point is made of the charge of the court to the jury or of the ruling of the court in any other respect.

The proof showed the delivery of the shipment to the defendant and its nondelivery at destination, its ownership, the amount of damages sustained, and that claim was duly made for the same in accordance with the terms of the bill of lading.

The defense is that the car in which the shipment was made belonged to the plaintiff; that it was an ordinary tank car, and was tendered to the defendant after being fully loaded; that the damage to the shipment resulted from a leak in the car, which was not susceptible of discovery by the most careful inspection from the outside, and that it was impossible, by reason of the contents of the car, to make an inspection from the inside; that there was an inspection of the car immediately after its delivery to the defendant and careful handling of the same thereafter until the leak developed, and then the exercise of ordinary care to diminish the damages.

The question, therefore, for decision, is whether or not under such circumstances the common carrier liability of the defendant obtains, or whether it is liable only by a showing of negligence causing or contributing to the damage after the delivery of the car to it.

The defendant admittedly was under no obligation to the plaintiff to furnish a tank car; but, under an agreement with the plaintiff and numerous other shippers, it had agreed to receive and transport merchandise belonging to the plaintiff and other shippers in cars belonging to it and them at a reduced rate, in consideration of the fact that the cars were furnished by said shippers, and the terms of this agreement are contained in a "Code of Rules," to which practically all of the railroads of the country and very nearly all of the private owners of railroad equipment are parties. The title to this code is in the following language: "Code of Rules Governing the Condition of, and Repairs to, Freight Cars for the Interchange of Traffic." The preface to the rules sets out that they are to be the guide to questions arising between the car owner and the carrier, with the intent of, first, making the owner responsible for and chargeable with repairs necessitated by ordinary wear; second, providing a means of settlement for damage through improper protection and handling by the carrier; and, third, providing an equitable basis for charging for repairs and damages. Rule 1 of the code is the rule relied upon by the plaintiff. It is as follows:

"Each railroad is responsible for the condition of all cars on its line, and must give to all equal care as to inspection, oiling, packing, and repairs, regardless of responsibility for expense of repairs."

It is argued by plaintiff's counsel that the provisions of this rule make the railroad company responsible to the shipper for any damage occurring as the result of a defect in a car to the same extent as if the car belonged to the railroad.

No authority is cited to sustain this construction of the contract, except that it was stated in argument by counsel that the view contended for had been accepted by three trial courts, one in New York, one in Tennessee, and one in Georgia, but that all of these cases had been compromised so that no appeal had been taken in any of them. Inasmuch as the question is apparently one of first impression, it is regretted that time is not available for a fuller discussion of the point involved.

On behalf of the shipper, it was stated in argument that the question of the responsibility of the railroad companies had not been challenged until the federal administration of railroads during the war, that there were in the neighborhood of a quarter of a million railroad cars of one kind and another in use on the railroads of the United States belonging to private owners, and that in the very nature of things such private owners should not be held, without having specifically so agreed, to have waived the right to hold the railroad companies to their full responsibility as common carriers while at the same time relieving them of the large capital expenditure involved in the purchase of such cars. On the other hand, it is suggested that the use of these cars and other cars specially built to carry particular kinds of freight is a convenience to the shipper rather than to the railroad company, and enables the shipper to move his freight more satisfactorily and more economically, and that, in addition, the consideration to him for the building of such cars is the reduced rate at which the carrier transports the shipment when loaded on the same.

In the view that I take of the situation, the matters suggested, while interesting, are not particularly helpful in determining the main question. The defendant, undoubtedly, would have been responsible to the plaintiff for the loss sustained on account of the leakage from the tank car in which the shipment in question was being transported if the car had been furnished by the railroad company. I think it is equally true that, except for some

special contract on the subject, it would not have been responsible for the loss, if the car had been furnished by the shipper, and the loss occurred, as it did occur in this case, in spite of the exercise by it of due care to avoid such loss. It becomes necessary, therefore, to determine whether there was such an agreement. If there was, admittedly it is embraced in rule 1 as quoted above. That rule, it is true, states in so many words that the railroad company "is responsible for the condition of all cars on its line," and this language, taken by itself, would seem to imply an assumption of responsibility for loss occurring as the result of the defective condition of any such car; but I am satisfied that it was not so intended, and it cannot be and should not be so construed. An examination of the rules from beginning to end shows that the purpose of their adoption was, as stated in the preface, to make the car owner chargeable with repairs under certain given circumstances and the railroad chargeable with repairs under certain other given circumstances, and to provide a means of securing the repairs and allocating the cost of the same. Elaborate provisions are contained in the rules with relation to the character of equipment of the cars and the method of handling the cars when defects are discovered, whether loaded or unloaded, and like matters. In other words, the intent and purpose of the rules is to provide for the interchange of cars, and in no sense do they relate to or were they intended to cover the question of responsibility between the parties in relation to the contents of the same or to alter or modify the existing law with relation to such matters. If, therefore, as the result of a failure to properly inspect a car in transit on its railroad or to handle the same with due care, damage ensues, the railroad company will be liable. If, on the other hand, loss is sustained by some hidden defect in the car, undiscoverable in the exercise of due care, the railroad company will not be responsible. It is true that, if this be the rule, the shipper, in himself furnishing the car, impliedly warrants its fitness and use for the purposes intended, in consideration of which his shipment is transported at a lower rate. If it were otherwise, the railroad company, in the exercise of the very highest degree of care on its part, would still be responsible although the shipper might, himself, have been guilty of gross negligence in the delivery of a defective car; and this is well illustrated in the case under consideration, for here the defect which caused the loss might, in the exercise of ordinary care on the part of the shipper, have been discovered before the oil was loaded and delivery of the car made, whereas no amount of inspection by the railroad could have developed that condition after delivery of the car to it.

I do not mean to hold that it is not permissible for the railroad company to enter into such an agreement as is contended for by the plaintiff here, although it is urged that to do so would be a discrimination in favor of one shipper as against another, unless all were protected alike, but, without regard to this question, I am of opinion that this has not been done in the agreement referred to, and that the rule invoked has not that effect.